IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
BRIANNA TISON,              )
                           )
     Plaintiff,            )
                           )        CIVIL ACTION NO.
     v.                    )         2:18cv486-MHT
                           )            (WO)
ALACHUA STRAW COMPANY LLC, )
                           )
     Defendant.            )
```

### OPINION AND ORDER

Plaintiff Brianna Tison brings two federal claims against defendant Alachua Straw Company, LLC: sexual harassment and retaliation, both in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 1981a, 2000e–2000e–17. She also brings two state claims: invasion of privacy and negligent hiring, retention, training, or supervision. The court has jurisdiction over the federal claims pursuant to 42 U.S.C. § 2000e-5(f)(3) (Title VII) and 28 U.S.C. § 1331 (federal question) and has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367. The case is now before the court on Alachua Straw's

motion for summary judgment.  For the reasons described below, summary judgment in favor of the company will be denied as to the federal claims and granted as to the state claims.

## I. Standard for Summary Judgment

"A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court must view the factual allegations in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine

2

issue of material fact, and summary judgment will be granted.  *See Beal v. Paramount Pictures Corp.,* 20 F.3d 454, 459 (11th Cir. 1994).


## II. Background

The relevant facts, taken in the light most favorable to Tison, are as follows.

Tison began working for Alachua Straw in early March 2017.  She was hired by Andrea (Andi) Miller, one of the two co-owners of the business, with input from Mason Wade, the production supervisor and other co-owner.  Miller and Wade had previously dated.

While Tison worked at Alachua Straw, Wade commented to Tison on her "nice legs," Depo. of Brianna Tison (doc. no. 16-2) at 76:05, and on her "sexy handwriting," *id.* at 45:23-46:03.  He often told her how "nice-looking" she was, *id.* at 74:17-22, and he said repeatedly (at least once in front of Miller) to Tison that he would take off his belt and "whoop [her]

ass," *id.* at 55:01-05; *see also id.* at 56:15-16.   Wade also stated to one of Tison's co-workers, who later relayed the statement to Tison, that he would "like to get a piece of that ass." *Id.* at 72:06-07.   Wade also grabbed Miller's buttocks while sticking his tongue out at Tison, suggesting to Tison, in light of his past behavior, that such conduct at work was acceptable. *See id.* at 65:02-09.

In late April, Wade grew very frustrated about an apparent mistake that Tison had made, screaming at Tison. He then had a private meeting with Tison, closing the blinds in the office and asking for a "little Kumbaya moment." *Id.* at 58:20.   In part because of Wade's past sexual actions toward her, Tison was frightened by his closing of the blinds.   Wade asked if their relationship would be "strictly business" going forward or, rather, if they could "be friends." *Id.* at 59:18-20.   Tison answered that it would be "strictly business," *id.* at 59:21-22,

**4**

understanding this as a suggestion for Wade to "leave [her] alone," *id.* at 59:03-04.  Nevertheless, after this event, Wade's sexually suggestive comments and behavior continued.

In all, Tison made clear to Wade "a few" times that his remarks were "not welcome."  *Id.* at 57:16-21.

On June 4, Tison reported Wade's comments and actions to Miller.[1]  Miller spoke to Wade, who expressed surprise at the allegations but later apologized to Tison.  However, the following day, after Miller received input from Wade, she fired Tison, suggesting that things were "going in a different direction" and that Wade did not think Tison "could handle it."[2]  *Id.*

---

1. The date of the meeting between Tison and Miller is disputed.  *See* Depo. of Brianna Tison (doc. no. 16-2) at 106:09-23 (asserting that it was in June); *id.* at 100:05-06 ("I believe June 4th or 5th.  It was a few days before I was fired."); Depo. of Andrea Miller (doc. no. 16-3) at 196:14-17 (asserting that Tison brought forward her complaint in April).

2. The exact dates of Tison's hiring and firing are also disputed.  *See, e.g.*, Plaintiff's Opposition to

at 117:11-15.   Tison's term of employment had lasted just under three months.

## III. Discussion

### A. Sexual Harassment

Title VII prohibits sex-based discrimination that alters the terms and conditions of employment. *See* 42 U.S.C. § 2000e-2(a)(1).  "An employee can establish a violation against an employer in either of two ways": (1) through the "creation of a hostile work environment caused by sexual harassment that is sufficiently severe or pervasive to alter the terms and conditions of the work," or (2) through a "tangible employment action," such as a termination or demotion. *Nurse "BE" v. Columbia Palms W. Hosp. Ltd. P'ship*, 490 F.3d 1302, 1308 (11th Cir. 2007).  Accordingly, in alleging unlawful sexual harassment by her employer, Tison puts forward both theories.

---

Defendant's Motion for Summary Judgment (doc. no. 20) at 5-7.

6

### 1.  Sexually Hostile Work Environment

To establish a hostile-environment sexual-harassment claim, an employee "must show (1) that she belongs to a protected group; (2) that she has been subjected to unwelcome sexual harassment; (3) that the harassment was based on her sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that a basis for holding the employer liable exists." *Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1244 (11th Cir. 2004); *see also Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc).  In its briefing, Alachua Straw discusses only the fourth and fifth factors: whether Wade's harassment was sufficiently severe or pervasive to alter the terms and conditions of Tison's employment and, if so, whether a basis for holding Alachua Straw liable exists.  *See*

Defendant's Memorandum (doc. no. 17) at 21 (discussing whether Wade's harassment was pervasive or severe); *id.* at 24 (discussing a possible affirmative defense).  The court considers these factors in turn.


### (a) Severity or Pervasiveness

To support her hostile-work-environment theory, Tison must show that the harassing conduct in question was sufficiently severe or pervasive to alter the terms or conditions of her employment.  "Harassment is severe or pervasive for Title VII purposes only if it is both subjectively and objectively severe and pervasive." *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 509 (11th Cir. 2000).  As to the subjective factor, Tison has met her burden: she perceived her work environment to be hostile or abusive, and she felt uncomfortable and intimidated in the workplace.  As to the objective analysis, the behavior must also yield an environment that a reasonable person would find to be

hostile or abusive.  *See Mendoza*, 195 F.3d at 1246.

To assess the objective severity or pervasiveness of harassment, courts consider, among other factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance.  *See Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002).  Though guided by these factors, courts should "employ a totality of the circumstances approach, instead of requiring proof of each factor individually," *Hulsey*, 367 F.3d at 1248--a recognition that "workplace conduct cannot be viewed in isolation, but rather is to be viewed cumulatively, and in its social context," *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) (en banc). Moreover, life's experiences teach us that it is not a mere calculation of quantity, but quality as well, and

that the impact of the whole of our experiences--that is, the cumulative effect of them--can be greater, if not much greater, than a mere tallying of the sum of those experiences.  Finally, "[e]ither severity *or* pervasiveness is sufficient to establish a violation of Title VII." *Id.* at 808.

Tison has presented ample evidence from which a reasonable jury could find that Wade's harassment of her was severe and pervasive.  These allegations and observations about them are as follows:

--Wade's offensive remarks were repeated, even routine.  *Cf., e.g.*, *Johnson*, 234 F.3d at 509 (describing harassment that occurred 15 times over four months); *Hulsey*, 367 F.3d at 1248 (describing as "frequent" behavior that occurred 18 times over two weeks).  Tison reports numerous instances over a three-month period, including near-daily references to her "sexy" handwriting, multiple unwanted comments regarding her legs, and other

general comments about her appearance.  Then there was Wade's grabbing Miller on the buttocks and sticking out his tongue at Tison, suggesting to Tison, in light of Wade's past behavior, that such conduct at work was acceptable.

--There were the three separate threats from Wade that he would "take off [his] belt and whoop [her] ass."  Depo. of Brianna Tison (doc. no. 16-2) at 55:01-05.  There was also the closing of the blinds to isolate a private meeting and the demanding of a "Kumbaya moment" with Tison, which, in and of themselves, might appear innocent, but, in part because of Wade's past actions toward her, frightened Tison.  *Id.* at 58:20

--During this meeting, Wade asked Tison if their relationship would be "strictly business" going forward or, rather, if they could "be friends."  *Id.* at 59:18-20.  Again, this would appear to be an innocent request, but, in light of

Wade's past harassment of Tison, Tison answered that it would be "strictly business," *id.* at 59:21-22, with the understanding that her answer would suggest to Wade to "leave [her] alone," *id.* at 59:03-04. Nevertheless, after this event, Wade's sexually suggestive comments and behavior continued.

--Wade's behavior led Tison to tears and frequent discomfort. It pervaded her daily work: she seemingly came to believe that shrugging off Wade's harassment was an implied requirement of her employment.

--It cannot be overlooked that these instances of harassment occurred in a context that may have heightened their effects. Wade and Tison "weren't merely co-workers." *Hulsey*, 367 F.3d at 1248. "They were a supervisor and an employee under his supervision, someone he had the power to fire." *Id.*

12

--On top of all this, there is sufficient evidence to support the conclusion that, immediately after Tison complained to Miller about Wade's harassment in order to get him to stop, he supported her termination. That Wade's harassment of Tison, viewed from its beginning--with each offensive act building on the one before--to its culmination in the end of Tison's employment, was pervasive and severe cannot be gainsaid, for the events accumulated over time and resulted in the severest result possible: her termination.

Therefore, cumulatively and in context, all of the above alleged events, should a factfinder believe them, were not only pervasive and severe, they unreasonably interfered with Tison's job performance--indeed, they led to the ultimate interference with her employment: her firing. In these circumstances, and in light of the considerations above, this court finds that Tison has met her burden. A reasonable jury could find that

13

the harassment in question was objectively severe, pervasive, or both. *See Hulsey,* 367 F.3d at 1248.

(b) Employer Liability and Affirmative Defense

Even when a plaintiff has successfully alleged a hostile work environment, her employer is not strictly liable.

First, if the harassing employee is the victim's co-worker, and not her supervisor, the employer is "liable only if it was negligent in controlling working conditions." *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). Here, however, the court understands Wade to have been Tison's "supervisor": he reported that he could have disciplined Tison, fired her, or assigned her tasks, all hallmarks of a "supervisor" under relevant precedent. *See, e.g.*, *id.* at 432.

Thus, Alachua Straw is liable for Wade's behavior unless it can establish the following affirmative defense. When the harasser is the victim's supervisor but no tangible-employment action is taken, "the

employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided." *Id.* at 424.[3] "Both elements must be satisfied for the defendant-employer to avoid liability, and the defendant bears the burden of proof on both elements." *Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d 1305, 1313 (11th Cir. 2001).

Alachua Straw has not established these two criteria. Among other things, Tison has provided evidence that Alachua Straw "had no sexual harassment policy and had never trained employees such as ... Wade or [Tison] regarding sexual harassment," Plaintiff's Opposition to Defendant's Motion for Summary Judgment

3. Here, for the purposes of its analysis, the court assumes that no tangible-employment action was taken. The tangible-employment-action theory is discussed in detail below.

15

(doc. no. 20) at 20, which weighs against the company's exercise of reasonable care. *See generally Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290, 1298 (11th Cir. 2000). Further, although Miller was aware of some of Tison's concerns as early as April, Wade's behavior apparently continued. Then, after Tison raised her complaints to Miller in an in-person meeting in June, she was fired days later.[4]

A reasonable jury could also find that, even if the evidence reflected that Alachua Straw *did* have a policy to redress discrimination in employment, Tison did not "unreasonably fail[] to take advantage of the preventive or corrective opportunities that the employer provided." *Vance*, 570 U.S. at 424. In general, a long delay can serve as evidence of such a failure. *Cf. Baldwin v. Blue Cross/Blue Shield of*

_____

4. As noted above, the date of the meeting between Tison and Miller is disputed. *See* Depo. of Brianna Tison (doc. no. 16-2) at 106:9-23 (asserting that it was in June); Depo. of Andrea Miller (doc. no. 16-3) at 196:14-17 (asserting that Tison brought forward her complaint in late April).

*Alabama*, 480 F.3d 1287, 1307 (11th Cir. 2007). But "[a]n employee in extreme cases may have reasons for not reporting harassment earlier that are good enough to excuse the delay." *Id.*; *see also Frederick*, 246 F.3d at 1314 ("[I]n some cases, the proof will show that the employee's non-compliance was reasonable under the circumstances and, in these cases, the defendant cannot satisfy the second element of the affirmative defense.").

Here, such considerations are in play. Wade's harassment continued, and indeed grew in severity, over time; Wade had been in a relationship with Miller that would rightly give Tison pause before she reported; and the complaint procedure, if any existed at all, was informal and unclear at best. Tison also had good reason to believe that her complaints would be ignored: she witnessed an incident of sexual touching of Miller that was not addressed. (Tison confirmed that, in her view, this event demonstrated that Wade's "sexist

**17**

treatment of women at work was approved by the owner." Depo. of Brianna Tison (doc. no. 16-2) at 65:07-09.) Further, Miller was aware of some of Wade's inappropriate behavior before Tison reported it to her in June, but nothing changed.  In a meeting between Wade, Miller, and Tison, Wade told Tison that he would "whoop [her] ass."  *Id.* at 54:12-55:15.  Miller responded: "Don't say that, it could be taken as sexual harassment."  *Id.* at 56:15-22.  But similar behavior apparently continued, suggesting that such conduct, even when reported, would continue unabated.  A jury could undoubtedly find that Tison's delay in reporting Wade's behavior was reasonable.

As to Tison's hostile-work-environment theory, then, a reasonable jury could find that Tison experienced sufficiently severe or pervasive harassment and that Alachua Straw should be held liable.  There is a genuine issue of fact.  Tison's claim survives.

18

## 2. Tangible Employment Action

In addition to her hostile-work-environment theory, Tison alleges unlawful sexual harassment in the form of a tangible-employment action.  *See Nurse "BE"*, 490 F.3d at 1308.  The court finds that Tison has alleged facts sufficient to support her tangible-employment-action theory, and that she has thus alleged enough to establish a genuine issue of material fact as to Alachua Straw's liability.[5]

To support her tangible-employment-action theory, Tison must prove (1) that a tangible-employment action occurred and (2) that it "was causally related to the incident of harassment."  *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1232 (11th Cir. 2006).

---

5. "If the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable" and no affirmative defense is available.  *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013).  Tison has successfully demonstrated, for the purposes of summary judgment, that Wade was her supervisor and that his actions culminated in a tangible-employment action, and thus that Alachua Straw is strictly liable.

Because termination clearly constitutes a "tangible employment action," *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998), Tison has established the first factor.   Tison must therefore demonstrate a causal relationship between her firing and the harassment that she experienced. *See Baldwin*, 480 F.3d at 1300.

With respect to causation, Tison has presented, at minimum, a genuine issue of material fact.   Viewing the evidence in the light most favorable to her, she has shown that she rebuffed Wade's invitation to be "friends," which she understood as an instruction to Wade to "leave [her] alone."   Depo. of Brianna Tison (doc. no. 16-2) at 59:03-04.   She resisted his repeated sexual remarks, ultimately reporting his comments to Miller.   She has also shown that Wade gave input into Miller's decision to fire her, even while his harassment was ongoing, and that Miller's decision was made shortly after Tison made her opposition clear.

*Cf. Cotton*, 434 F.3d at 1232 (noting that "temporal proximity between the harassment and a tangible employment action can give rise to a genuine issue of fact as to causation").

Alachua Straw, meanwhile, argues that Tison's job performance and inability to handle the company's "different direction" led to her firing, a notion that Tison disputes. *See* Depo. of Brianna Tison (doc. no. 16-2) at 117:11-15. But "[t]his is a classic dispute of a material fact; it is for the jury, and not the district court, to decide which party's rendition of fact is more credible." *Johnson*, 234 F.3d at 511.

Alachua Straw notes that, even with the facts viewed in the light most favorable to Tison, no *explicit* sexual demand was made, and that Tison's tangible-employment-action theory fails as a result. But this argument misunderstands the nature of harassment in the workplace. As the Eleventh Circuit has recognized, "sexual asides and insinuations are the

well-worn tools of a sexual harasser." *Frederick*, 246 F.3d at 1312. As a result, "a victim need not provide evidence of a direct and express sexual demand to make a claim under the 'tangible employment action' analysis." *Id.* A reasonable jury could find that Tison's termination was causally related to her rejection of Wade's advances.

## B. Retaliatory Termination

Taking evidence in the light most favorable to her, Tison has presented a *prima facie* case of retaliation in violation of Title VII. She has also put forth sufficient evidence to raise a factual question as to whether Alachua Straw terminated her employment because she complained about discrimination.

Title VII makes it illegal for "an employer to discriminate against any of his employees ... because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because

[s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "A *prima facie* case of retaliation under Title VII requires the plaintiff to show that: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).

Prongs one and two clearly favor Tison. Tison engaged in a protected activity: "An employee's complaint about discrimination constitutes protected activity if the employee could reasonably form a good faith belief that the alleged discrimination existed." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir. 2018) (internal quotation marks omitted). And an "adverse-employment action" is one that is materially

23

adverse such that it might "well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).  A termination qualifies.  *See Jefferson*, 891 F.3d at 924 ("Termination is a materially adverse action.").  On both of these prongs, Tison has met her burden.

Prong three asks about causation.  First, the Title VII retaliation inquiry demands that Tison demonstrate but-for causation: a plaintiff's retaliation claim "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).  Once a plaintiff has established his or her prima facie case, the employer must then articulate a legitimate, non-retaliatory reason for the challenged employment action.  *See Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1194 (11th Cir. 2016).  Then, after the defendant has met the

burden of articulation of a legitimate reason, the burden shifts back to the plaintiff: "[T]o avoid summary judgment [the plaintiff] must introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." *Brooks v. Cty. Comm'n of Jefferson Cty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006). That is, the plaintiff must "cast sufficient doubt on the proffered reasons to permit a reasonable factfinder to conclude that the reasons actually were a pretext for discrimination and retaliation." *Crawford*, 529 F.3d at 976.

Tison has both established a prima-facie case and raised a factual question as to whether Alachua Straw terminated her employment because she complained about discrimination. First, the obvious: she was fired after registering her complaint with Miller. Second, she was fired only days after raising her complaints with Miller, but over a month after her only write-up.

As the Eleventh Circuit has explained, "an employee's termination within days--or at the most within two weeks--of his protected activity can be circumstantial evidence of a causal connection between the two." *Jefferson*, 891 F.3d at 926.  And finally, Tison's firing came after a direct rebuff of Wade's "Kumbaya moment," which itself also came after the only write-up regarding Tison's job performance.  Put together, and drawing all reasonable inferences in favor of Tison, these allegations are enough to raise a question of fact as to whether Alachua Straw, in retaliation for Wade being accused of discrimination, fired Tison.

In response to Tison's prima-facie case, Alachua Straw must articulate a legitimate, non-retaliatory reason for the challenged employment action.  *See Trask*, 822 F.3d at 1194.  It is not clear that Alachua Straw has met its burden.  The requirement forces the employer "to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair

opportunity to demonstrate pretext." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255–56 (1981); see *also McClease v. Alabama Dep't of Corr.*, No. 2:07CV19-MHT, 2008 WL 110913, at *3 (M.D. Ala. Jan. 9, 2008) (Thompson, J.).  An employee, in other words, needs specific reasons to rebut.  Alachua Straw's brief presents this rationale: it "terminated Tison's employment after she 'messed up' several times." Defendant's Memorandum (doc. no. 17) at 26.  Elsewhere, Alachua Straw notes a handful of errors that created logistical hurdles or risked company liability, *see* Depo. of Andrea Miller (doc. no. 16-3) at 109:17-21, though only one was ever written up (on April 25, for missing a "live unload"), *see id.* at 179:12-15.  When she fired Tison, Miller suggested that things were "going in a different direction" and that Wade did not think Tison "could handle it."  Depo. of Brianna Tison (doc. no. 16-2) at 117:11-15.  After her termination, Tison asked whether her firing was related to her

27

report of sexual harassment.  Miller replied, "I don't believe so."  *Id.* at 104:17-105:05.

If the court assumes that Alachua Straw's reasons are sufficiently specific, Tison must convince the court that the stated reasons are pretextual, though not by questioning the *wisdom* of the employer's reason. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997).  Tison's evidence "must reveal such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005) (internal citations and quotation marks omitted).

Tison has met her burden.  Tison may indeed have struggled to complete some of her assigned tasks.  And, to be sure, "Title VII's anti-retaliation provisions do not allow employees who are already on thin ice to

**28**

insulate themselves against termination or discipline by preemptively making a discrimination complaint." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1270 (11th Cir. 2010). But as Tison highlights, the very close temporal proximity strongly suggests that her complaint, and not her past mistakes, caused her firing. *See Jefferson*, 891 F.3d at 926. At the summary-judgment stage, the Eleventh Circuit has recently credited "suspicious timing" as a sign of pretext, even in the face of multiple failing scores on employment evaluations and in the midst of a probationary period. *Id.* at 925. Here, Tison was fired mere days after reporting Wade's behavior to Miller. Further, as to Tison's struggles in the workplace, Alachua Straw's records indicate only *one* write-up (dated April 25) for a missed unload. That Tison's firing came mere days after her complaint, but several weeks after an apparently serious mistake--and, it seems, her *only* mistake worthy of a

write-up--bolsters her case.   A reasonable jury could find that Tison's complaint was the "but-for cause" of her termination.   Her retaliation claim survives summary judgment.


## C. Invasion of Privacy

Tison asserts a state claim of an invasion of privacy through "intru[sion] into ... private seclusion."  Complaint (doc. no. 1) at 10.[6]  To succeed on a claim of intrusion upon seclusion "relating to sexual harassment, a plaintiff must show: (1) that the matters intruded into are of a private nature; and (2) that the intrusion would be so offensive or

---

6. Under Alabama law, a claim for invasion of privacy may consist of "four limited and distinct wrongs: (1) intruding into the plaintiff's physical solitude or seclusion; (2) giving publicity to private information about the plaintiff that violates ordinary decency; (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; or (4) appropriating some element of the plaintiff's personality for a commercial use." *Johnston v. Fuller*, 706 So. 2d 700, 701 (Ala. 1997).  Tison alleges the first prong, intrusion into seclusion.

objectionable that a reasonable person subjected to it would experience outrage, mental suffering, shame, or humiliation." *Ex parte Atmore Cmty. Hosp.*, 719 So.2d 1190, 1194 (Ala.1998). Thus, a plaintiff must allege "something in the nature of prying or intrusion" by a defendant. *Stevenson v. Precision Standard, Inc.*, 762 So. 2d 820, 826 (Ala. 1999) (citation and quotation marks omitted). But the actual "acquisition of information from a plaintiff is not a requisite element of [this] cause of action." *Phillips v. Smalley Maint. Servs., Inc.*, 711 F.2d 1524, 1534 (11th Cir. 1983).

Severe sexual harassment can constitute an invasion of privacy under Alabama law, though it does not always. For instance, the Supreme Court of Alabama has "held that extensive egregious inquiries into one's sex life, coupled with intrusive and coercive sexual demands, constituted a wrongful intrusion into one's private activities sufficient to outrage or cause mental suffering, shame or humiliation to a person of

31

ordinary sensibilities." *Stevenson*, 762 So. 2d at 826 (internal citations omitted).  But that court also held that "asking a co-employee for a date and making sexual propositions usually do not constitute an invasion of privacy." *Ex parte Atmore Cmty. Hosp.*, 719 So. 2d at 1194.

Where the Alabama Supreme Court has found sexual harassment to constitute a state claim of invasion of privacy, the underlying allegations have involved prying or intrusive comments or behavior--typically explicit sexual requests, direct and invasive questioning, or violations of physical privacy.  *See, e.g.*, *Ex parte Atmore Cmty. Hosp.*, 719 So. 2d at 1194 (holding that several lewd comments, a request to meet outside of work hours for "other than business purposes," and looking up plaintiff's skirt amounted to substantial evidence of an invasion of privacy); *Phillips*, 435 So. 2d at 711 (holding that intrusive demands and threats, including an inquiry as to

32

plaintiff's sex life, plus other propositions amounted to an invasion of privacy); *see also Busby v. Truswal Sys. Corp.*, 551 So. 2d 322, 324 (Ala. 1989).  In contrast, where these elements are missing, highly objectionable behavior that constitutes harassment has been found insufficient to establish the tort of invasion of privacy.  In *McIsaac*, for instance, the Supreme Court of Alabama found that a defendant's repeated propositions, attempts to kiss the plaintiff, and attempt to have her fired for rejecting his advances nonetheless did *not* constitute a state-law tort.  *See McIsaac v. WZEW-FM Corp.*, 495 So. 2d 649, 650 (Ala. 1986).  Put simply, under Alabama law, severe harassment must be of a prying nature to constitute an invasion of privacy.[7]

---

7. Indeed, this court, applying Alabama law, has recognized this distinction at the summary-judgment stage.  In *Wilborn*, this court distinguished between a defendant who pulled up the plaintiff's shirt (and made an inappropriate comment), against whom an invasion-of-privacy claim survived summary judgment, and another defendant, whose lewd statements

33

Tison's invasion-of-privacy claim therefore cannot survive Alachua Straw's summary judgment motion.  While Tison describes repeated comments that are very clearly inappropriate, and at times highly offensive, she has not alleged repeated, explicit sexual propositions, invasive questioning, or physical acts.  That is, the behavior she describes was not in the "nature of prying or intrusion."  *Stevenson*, 762 So. 2d at 826.  It therefore falls short of the "intrusive demands and threats" required to establish a state-law invasion of privacy.  *Phillips*, 435 So. 2d at 711.[8]

---

"contributed to the creation of a hostile environment" but did not constitute a state-law tort.  *Wilborn v. S. Union State Cmty. Coll.*, 720 F. Supp. 2d 1274, 1311 (M.D. Ala. 2010) (Thompson, J.).

8.  In short, a Title VII harassment claim and a state invasion-of-privacy claim are analytically distinct, though there is some overlap.  It is not merely a matter of one involving conduct that is worse than the conduct involved in the other.  Some of the distinctions between them include:

## D. Negligent or Wanton Hiring, Supervision, Training, Retention

Finally, Tison claims negligent or wanton hiring, supervision, training, or retention.  Alachua Straw is entitled to summary judgment in its favor on this

| *Title VII Harassment* | *Intrusion Upon Seclusion* |
|---|---|
| Limited to employment context | May occur outside of employment context |
| Not limited to prying; can include lewdness or offensiveness that does not constitute prying | Involves prying, explicit requests/demands, or direct inquiries into private concerns |
| Conduct must impact terms or conditions of employment because it is objectively severe or pervasive | Conduct need not impact terms or conditions of employment, but must be highly offensive or objectionable to a reasonable person |
| Must be a victim or group of victims, but conduct can be "environmental" -- *e.g.*, showing pornographic films to all employees | Typically, specifically directed at a victim or group of victims |
| Harassment must be "based on" sex of victim, but need not touch upon "private matters" | Must involve intrusion into "private matters," but need not be "based on" sex of victim |

claim.[9]

Put simply, because Tison's allegations could not support her invasion-of-privacy claim, they also cannot support her claim of negligent or wanton supervision, etc. "A party alleging negligent or wanton supervision and hiring must also prove the underlying wrongful conduct of employees." *Voyager Ins. Companies v. Whitson*, 867 So. 2d 1065, 1073 (Ala. 2003); *see also Stevenson*, 762 So. 2d at 825. *See generally Smith v. Boyd Bros. Transp.*, 406 F. Supp. 2d 1238, 1248 (M.D. Ala. 2005) (Thompson, J.) ("Under Alabama law, the finding of underlying tortious conduct is a precondition to invoking successfully liability for the negligent or wanton training and supervision of an employee.").

---

9. The complaint has four counts, and each count corresponds to a claim. However, the complaint incorrectly entitles count four (the claim of negligent or wanton hiring, supervision, training, or retention) as count five.

It is unclear whether Tison argues that a federal statutory violation (*i.e.*, the Title VII violations discussed above) is the basis for her state negligence-or-wantonness claim. If this were allowable, then her negligence-or-wantonness claim might survive. But Alabama law puts this theory to rest. As this court has summarized, in considering a claim of negligent or wanton hiring, retention, training, or supervision, "it is clear that the employee's wrongdoing must be based on state, and not federal, law." *Guy v. Alabama Power Co.*, No. 2:13CV8-MHT, 2013 WL 3929858, at *2 (M.D. Ala. July 29, 2013) (Thompson, J.); *see also Stevenson*, 762 So.2d at 824. The plaintiff's case must begin with proof of "the underlying tortious conduct of an offending employee." *Potts v. BE & K Const. Co.*, 604 So. 2d 398, 400 (Ala. 1992); *see also Edwards v. Hyundai Motor Mfg. Alabama*, *LLC*, 603 F. Supp. 2d 1336, 1357 (M.D. Ala. 2009) (Thompson, J.). Here, therefore, Tison cannot

rely on her federal Title VII claims as the basis for her negligence-or-wantonness claim, and, because her underlying state invasion-of-privacy claim has not survived, her negligence-or-wantonness claim must also fall.

***

For the foregoing reasons, it is ORDERED that defendant Alachua Straw Company, LLC's motion for summary judgment (doc. no. 16) is denied as to plaintiff Brianna Tison's two federal claims of sexual harassment and retaliation and granted as to her two state claims of invasion of privacy and negligent hiring, training, retention, or supervision. The two federal claims will go to trial.

DONE, this the 6th day of March, 2020.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE